## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LUKEN COMMUNICATIONS, LLC d/b/a GET AFTER IT MEDIA, )<br><br>Plaintiff, )<br><br>v. )<br><br>BRIGHTCOVE, INC., )<br><br>Defendant. ) | No. 23-cv-12326-JEK |

 

```
                                  )
LUKEN COMMUNICATIONS, LLC         )
d/b/a GET AFTER IT MEDIA,         )
                                  )
        Plaintiff,                )
                                  )     No. 23-cv-12326-JEK
v.                                )
                                  )
BRIGHTCOVE, INC.,                 )
                                  )
        Defendant.                )
                                  )
```

## MEMORANDUM AND ORDER ON DEFENDANT'S PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

**KOBICK, J.**

Plaintiff Luken Communications, LLC brings this action alleging that defendant Brightcove, Inc., an online video streaming technology services provider, failed to provide certain monetization services that it was obliged to provide pursuant to a contract between the parties. Pending before the Court is Brightcove's motion seeking judgment on the pleadings on Luken's claim under M.G.L. c. 93A, § 11, which alleges that Luken lost revenue because Brightcove intentionally or negligently misrepresented its ability to provide monetization services. At this stage in the proceedings, those allegations give rise to a plausible claim of deceptive conduct under Chapter 93A. Brightcove's motion will, accordingly, be denied.

## BACKGROUND

In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court accepts as true all well pleaded facts in the complaint and draws all reasonable inferences in Luken's favor. *See Doe v. Brown Univ.*, 896 F.3d 127, 130 (1st Cir. 2018). Where appropriate, the Court also "'supplement[s] those facts by reference to documents

incorporated in the pleadings.'" *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 56 (1st Cir. 2018) (quoting *Jardín de las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 130 (1st Cir. 2014)).

Luken is a media company based in Chattanooga, Tennessee, that does business under the name "Get After It Media." ECF 1, ¶¶ 1, 5. Between 2020 and 2023, Luken operated multiple television stations and digital television multicast networks, including The Family Channel, Heartland, Retro TV, The Action Channel, and Rev'n. *Id.* ¶ 5. On August 26, 2020, Luken and Brightcove entered into a contract pursuant to which Brightcove agreed to provide Luken with its Brightcove Beacon service. *See id.* ¶ 6; ECF 17-1, at 2-7, Order. The Brightcove Beacon service included video cloud services and over-the-top applications ("OTT apps")[1] that would allow customers to stream video content from Luken's networks on various devices. ECF 1, ¶ 6.

Before the parties executed the contract, Brightcove represented to Luken that it could monetize Luken's content through the Brightcove Beacon service. *See id.* ¶ 7. Specifically, Brightcove represented that Luken would receive revenue from advertisements that would play periodically during Luken's on-demand shows when customers streamed the shows using the OTT apps. *See id.* Luken entered into the contract with Brightcove in reliance on Brightcove's representation that it could provide monetization services and with the expectation that advertisements would indeed play during Luken's on-demand shows when streamed through the OTT apps. *Id.* ¶¶ 7-8. The contract provided for a thirty-six month total term, made up of three sub-terms—one initial twelve-month term, effective as of August 26, 2020, and two mandatory twelve-month renewal terms. *See* ECF 17-1, at 2, Order.

---

[1] "An over-the top ("OTT") application is an application that provides media over the Internet and bypasses traditional TV distribution. An example of an OTT application is the Netflix app on an Apple TV or Roku device." ECF 17, at 10, ¶ 4; *see* ECF 18, ¶ 4 (admitting this definition).

Ultimately, advertisements never played during Luken's on-demand shows when customers streamed them through the OTT apps, and Luken did not receive any advertising revenue through its use of Brightcove Beacon during the three-year term of the contract. *See* ECF 1, ¶¶ 9-12. Luken's agents made "numerous requests for assistance" regarding the lack of advertisements and participated in "multiple meetings" with the account and onboarding managers who Brightcove initially assigned to Luken. *Id.* ¶ 9. Although the initial Brightcove account and onboarding managers attempted to assist, they were unable to correct the issues that were preventing advertisements from playing during on-demand shows. *Id.* Subsequent Brightcove account and onboarding managers also failed to correct those issues or to offer Luken alternative methods for generating advertising revenue. *Id.* ¶ 10.

At some point in 2023, Brightcove was able to "correct the monetization issues." *Id.* ¶ 11. Once it developed the capacity in 2023, Brightcove offered monetization services to Luken, but at a higher rate. *Id.* ¶ 11. Luken declined to purchase those services. *Id.*

Luken filed this action in October 2023, asserting claims under Massachusetts law for breach of contract, breach of the implied covenant of good faith and fair dealing, misrepresentation, reliance, and for a violation of Chapter 93A. *Id.* ¶¶ 13-42. Brightcove answered and asserted a counterclaim alleging that Luken breached the contract by failing to make payments due since November 2022. ECF 17, at 11-12, ¶¶ 9-12. Brightcove thereafter filed a partial motion for judgment on the pleadings, seeking judgment in its favor as to Luken's claim under Chapter 93A. ECF 19.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings

under Rule 12(c) "is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (citing *Curran v. Cousins*, 509 F.3d 36, 43-44 (1st Cir. 2007)). Accordingly, "'the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom.'" *Id.* (quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006)). Precisely because a Rule 12(c) motion seeks "an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual averments as true." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 631 (1st Cir. 1988).

"[T]o survive a 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Pérez-Acevedo*, 520 F.3d at 29 (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In reviewing a Rule 12(c) motion, the Court "may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" *Curran*, 509 F.3d at 44 (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## DISCUSSION

Brightcove seeks judgment on the pleadings only as to Luken's claim under Chapter 93A, Massachusetts's consumer protection statute. Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a). "To state a claim under [Chapter 93A], a plaintiff must allege facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff sustained an injury; and fourth, that the defendant's

4

unfair or deceptive conduct was a cause of the injury." *Rafferty v. Merck & Co., Inc.*, 479 Mass. 141, 161 (2018) (citation omitted).

Although the statute does not define what constitutes an unfair or deceptive act or practice, Massachusetts courts have held that "an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)). An act or practice is deceptive "'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Id.* (quoting *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004)). "A successful [Chapter] 93A claim based on deceptive acts or practices does not require proof that a plaintiff relied on the representation, or that the defendant intended to deceive the plaintiff, or even knowledge on the part of the defendant that the representation was false." *Aspinall*, 442 Mass. at 394 (citing *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975); *Swanson v. Bankers Life Co.*, 389 Mass. 345, 349 (1983)).

"[A] mere breach of contract, without more, does not amount to a violation of [Chapter 93A]." *City of Beverly v. Bass River Golf Mgmt., Inc.*, 92 Mass. App. Ct. 595, 606 (2018). On the other hand, "[t]o be held unfair or deceptive under [Chapter] 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness." *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994). Thus, knowingly making a false representation can constitute a deceptive trade practice, *see Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760,

779 (1986), as can conduct "in disregard of known contractual arrangements and intended to secure benefits for the breaching party," *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474-75 (1991) (internal quotation marks omitted). *See also VMark Software, Inc.*, 37 Mass. App. Ct. at 620 ("'[A] misrepresentation in the common law sense would . . . be the basis for a [Chapter] 93A claim.'" (quoting *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979))).

Brightcove contends that Luken's Chapter 93A claim fails as a matter of law because, in substance, the conduct alleged amounts to nothing more than an ordinary breach of contract and does not rise to the level of unfair or deceptive behavior required for Chapter 93A liability. The Court disagrees. Luken alleges that, before the parties executed the contract on August 26, 2020, Brightcove represented that it was capable of monetizing Luken's content through advertisements run through the Brightcove Beacon service; that, at the time Brightcove made these representations, Brightcove was actually incapable of providing monetization services; and that Brightcove's misrepresentations were "intentional and/or negligent." ECF 1, ¶¶ 7, 9-12, 38. Luken further alleges that it entered into the contract with Brightcove in reliance on Brightcove's representations and that it never received advertising revenue through its use of Brightcove Beacon. *Id.* ¶¶ 7-12. Drawing all factual inferences in favor of Luken, *see Pérez-Acevedo*, 520 F.3d at 29, Brightcove's intentional misrepresentation—that it was capable of providing Luken with monetization services through advertisements when it was, in fact, incapable—amounts to conduct that "'possesses a tendency to deceive'" and "could reasonably be found to have caused [Luken] to act differently from the way [it] otherwise would have acted." *Walsh*, 821 F.3d at 160 (quoting *Aspinall*, 442 Mass. at 394); *accord Martorana v. Progressive Direct Ins. Co.*, No. 22-cv-10613-DJC, 2023 WL 2465639, at *7-8 (D. Mass. Mar. 10, 2023).

Brightcove has two principal rejoinders. First, Brightcove contends that its 2020 representation that it could provide Luken monetization services was not a *mis*representation, because Brightcove ultimately was able to provide monetization services at some point in 2023. ECF 25, at 1-2; *see* ECF 1, ¶ 11. This argument ignores the distinction between a present capacity to provide services and a future capacity to provide services. The parties' August 26, 2020 contract provided for three year-long terms—one initial term and two subsequent renewal terms. ECF 1, ¶ 14; ECF 17-1, at 2-4, Order. The first and second terms of the contract expired before 2023, and the third term expired in 2023. *See id.* Even if, as the parties stated at the hearing, both sides expected a "ramp up" period during the first year of the contract—as reflected in the reduced rate paid by Luken for that year—the complaint alleges that Brightcove could not provide monetization services during the initial year-long term, the first year-long renewal term, and at least part of the second year-long renewal term. *See* ECF 1, ¶¶ 8-12, ECF 17-1, at 2, Order. At a minimum, based on Luken's well-pleaded factual allegations, Brightcove misrepresented its ability to provide monetization services for much of the contractual period.

Second, Brightcove contends that, as a matter of law, the Chapter 93A claim is foreclosed by contractual language providing that *Luken* would be solely responsible for integrating monetization options, including advertisements, into the Brightcove Beacon service, as well as by the integration and no reliance clauses in the contract. ECF 25, at 2-3. The "Monetization Options" provision of the contract specifies that Luken "is solely responsible for any integrations or requirements necessary for [Luken] to use any of the monetization options included within its Brightcove Beacon package including, without limitation, payment systems, subscriber databases, advertising exchanges, and App Store product catalogs." ECF 17-1, at 5, Order. The contract also contains the following integration clause:

> This Agreement, including any Orders entered into hereunder, constitutes the entire understanding of the parties hereto with respect to the matters contemplated hereby, supersedes all previous agreements between the parties concerning the subject matter hereof and cannot be amended except by a writing signed by authorized representatives of both parties.

ECF 17-1, at 15, Brightcove Master Services Agreement, § 17(k). And it specifies further that "[n]o party hereto has relied on any statement, representation or promise of any party or representative thereof except as expressly set forth in this Agreement." *Id.* § 17(l). In light of these provisions, Brightcove contends, Luken was solely responsible for integrating advertisements into the on-demand shows streamed through the OTT apps, and any Chapter 93A claim premised on the parties' communications that were inconsistent with that contractual responsibility must fail.

Under Massachusetts law, a "court interpreting a contract must first assess whether the contract is ambiguous," looking to the "'language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties.'" *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 783 (1st Cir. 2011) (quoting *Bank v. Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008)). A "contract is only ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Bank v. Int'l Bus. Machines Corp.*, 145 F.3d 420, 424 (1st Cir. 1998) (internal quotations marks and citation omitted) (applying Massachusetts law). Here, the Monetization Options clause highlighted by Brightcove does not unambiguously make Luken solely responsible for effectuating monetization through the Brightcove Beacon service. That clause focuses on "the monetization options *included within* [Luken's] Brightcove Beacon package," and makes Luken "solely responsible for any integrations or requirements necessary" to use those options. ECF 17-1, at 5, Order (emphasis added). The provision

contemplates that the Brightcove Beacon package would include monetization options, even while Luken bore responsibility for integrations needed for advertising.

The Court is not persuaded that the Monetization Options clause clearly or unambiguously relieves Brightcove of any responsibility for monetizing Luken's content through advertisements. Thus, this is not a case in which a party is "trying to reverse the precise terms of an agreement," such that an integration clause may preclude consideration of the parties' communications. *Turner v. Johnson & Johnson*, 809 F.2d 90, 96 (1st Cir. 1986) (applying Massachusetts law). Rather, it is a case in which "the agreement is to some extent left undefined, and the plaintiff's understanding of the agreement logically may be colored by the defendant's prior statements." *Id.*; *see also Starr v. Fordham*, 420 Mass. 178, 188 (1995) (an "integration clause in a contract does not insulate automatically a party from liability where he induced another person to enter into a contract by misrepresentation"). Brightcove may not, therefore, rely on the integration and no reliance clauses in the parties' contract to foreclose consideration of the factual allegations in the complaint that undergird Luken's Chapter 93A claim.

## CONCLUSION

For the foregoing reasons, the defendant's partial motion for judgment on the pleadings is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
United States District Judge

Dated: March 19, 2024

9